Case 18-5257 United States of America v. Nickey Ardd Argument not to exceed 15 minutes per side Mr. Bell, you may proceed for the appellant when you're ready Good morning. May it please the court. My name is David Bell, and I represent the appellant Nickey Ardd in this case. At this time, I would like to ask for two minutes for rebuttal time. Your Honor, this is a case about the power of law enforcement to avoid the requirement of the Fourth Amendment that a search be reasonable. This court should reverse this case, grant the motion to suppress and remand it to the district court for three reasons. First, the triggering event, the sale of narcotics, was not sufficient to execute an anticipatory search warrant on a house several miles away. Second, the district court erred in denying a Franks hearing after evidence of false statements and reckless disregard for the truth in a warrant was exposed and the remaining content was insufficient for probable cause. And third, the Leon good faith exception does not apply in this case where the issuing magistrate was misled by information in an affidavit that the affiant knew was false. If you win your argument, the only thing that you set aside is this charge on the Lugar, right? It counts four and five, Your Honor, the search of the house. And what we would be asking the court to do is remand it and grant the motion for new trial, Your Honor. Let me make sure I explain. In this case, there was a full-blown trial after the two suppression hearings and all of the filings in the matter. But the jury heard evidence not only of the actual incident that happened at the at-home store, the parking lot where the alleged narcotics transaction happened, but the jury also heard evidence of the subsequent search of the house that included a firearm and other drugs at the house.  They were not, but the evidence was brought in at trial and was allowed by the judge to be brought in at trial. But your client told, when he was arrested and given his Miranda warnings, didn't he say he had a firearm and drugs back home? After the search of the house, he admitted to the possession of. I thought it was before the search. Actually, the search happened right after the, they weren't concurrent. They didn't The organized crime unit took Mr. Ard into custody, and then the organized crime unit went to Mr. Ard's house, where Mr. Ard's wife, Ms. Polk, was. Mr. Ard was not there in the house for the search, but after the search, then those same officers went back to the organized crime unit office, they have their own office in Memphis, and took the statement from Mr. Ard. The statement from Mr. Ard was taken after the execution of the search warrant. But the other thing I would point out is that in the actual trial, there were a number of statements that were, there was testimony that was given by Detective Tellez, Officer Akrid, Officer Flores, a Pacino Bryant who was in the car with Mr. Ard, and many of these statements contradicted each other, which we've laid out pretty succinctly. Let's just, so there's probable cause that there's going to be an arrest. That's not the problem. Your big concern is the assumption that once you have the arrest, it's fair game to look for drugs in the home, right? That's your big concern. And I realize we've got cases kind of all over, but why isn't, one way to think about it is, you know, maybe there is a problem with too quickly assuming if you have drugs on you, there's automatically drugs in the home, but what if the evidence is about a distribution amount of quality, a quantity of drugs? That seems to me to be a, you know, horse of a different stripe. If someone's got, if what we're discussing are drugs that go way beyond what one would consume, it does seem like a pretty, again, it's probable cause. In inferences, that seems like a pretty fair inference to me, as opposed to an amount that's just the amount you might consume, because... Your Honor, if you're meaning that relying upon that transaction for evidence that there might be drugs back at the house or something like that, I will point out that the purchase was made by Mr. Ard of the cocaine. The person that actually brought the cocaine to the scene was Detective Tellez. Mr. Ard did not bring the cocaine. Mr. Ard brought some money. No, no, no, I got the point, but if the amount of the sale is enough that gets you way beyond what one would consume, that means it's a fair inference drug distribution. Once you have a fair inference of drug distribution, there's a fair inference that the tools of the trade, including perhaps more drugs, will be at the home. So why isn't that pretty probable? Your Honor, respectfully, I disagree that that should be an automatic inference that is taken. It's not automatic. Well, it's automatic if it's a sufficiently high amount. That is the point I'm trying to make. But if the person is buying it right then, why would you think it's at the house? Well, if you're engaged in drug distribution, the only way that wouldn't be true is if this was the first time he'd ever died. There was actually testimony that there was a completely separate house that Mr. Ard had that he operated as a gambling house. And on that same basis, the police could go search any house that I couldn't agree more. In other words, it follows. It's probability. It's not beyond a reasonable doubt. I understand. This court disagrees. This court disagreed in McCoy just back in September. The statement that the Sixth Circuit made in that case was, to infer permissibly that a drug dealer's home may contain contraband, the warrant application must connect the drug dealing activity and the residence. And this is starting to cite around here. Typically, this will require some fact showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence. And I think what this court was saying at that point... I can find you five cases that just say the fact of drugs is enough. Not even amount. And I'm trying to focus on a high amount, which is what leads to the distribution inference. Actually, in most of the cases, including the most recent cases, including just one that came out November the 1st, Fitzgerald, which was a case I believe Judge White was on, that case actually had a situation where the court found that in such a similar circumstance that there was not probable cause for that warrant to be issued because there had not actually been established that any sort of evidence that something was going on. It was as substantial a drug sale as this one? Yes. Actually, in that one, there was a 62-paragraph search warrant application, if I'm not mistaken. In the search warrant, the affidavit was 62 paragraphs long that detailed a years-long investigation into all of the drug trafficking that that individual, Fitzgerald, had been involved in. We don't have anything like that here. You're saying that one involved more drugs than this one? That's my question. Potentially, if it was a year-long situation where there were numerous deliveries. But on that particular case, no. I would argue that it's not the amount of the drugs that's important to relate back to a particular place. It's whether there's actually an establishment that that place has anything to do with the drug dealing. The only thing established here is that the police officer... He lived there. Excuse me? He lived there. He lived there. That was it. Was the police officer saying in there that his practice was that large drug dealers or people of this sort keep drugs at their home? Yes, he did say that. It was in that affidavit. It was in that affidavit. To Detective Tellez's credit, he is good at putting that boilerplate paragraph into this affidavit. But he actually requested... He was looking for drug proceeds and drug records. He wasn't looking for drugs. No. He state... Well, actually, in the affidavit, he's stating that he wants a search of the house to find anything consistent with the drug dealing. And he includes in the affidavit that sometimes people have proceeds and ledgers, drug ledgers, as he specifically said, none of which necessarily was found. Can we transition to good faith? I mean, what about that? Well, I think that one of the things we get into with good faith is that the issuing magistrate in this case, and from the Leon information, or excuse me, the Leon language, was misled by information in an affidavit that the affiant knew was false. And, of course, this court's case in Haring sort of expands that or explains it a little bit better by talking about whether there's deliberate, reckless, or grossly negligent conduct involved. And, of course, as this court has reviewed all of the filings in this case, and I'm sure the court has reviewed the record of the multiple suppression hearings, what happened was we originally filed a motion to suppress in Mr. Ard's case. And we found out under cross-examination of Detective Tellez that the affidavit, which stated first that detectives with the Organized Crime Unit received information from a reliable confidential informant about Ard being involved in the sale and distribution of powder cocaine in the city of Memphis. The confidential informant observed Ard possessing, storing, and transporting both powder cocaine and crack cocaine in the past, and then skips down and says, the reliable confidential informant, and in every one it tags confidential informant as CI, has provided information in the past that has led to over five felony drug arrests and convictions. I just want to make sure I understand what you're doing. Are you focused on the two informants' points? I'm focusing on the two appointments, because that's one of the two things. I apologize, Your Honor. I'm just trying to let you know where I'm coming from and what I'm thinking. Great. And that's what I'm talking about. So we have... I haven't asked my question yet. So my question is, why is it a problem if the good informant is the one that supplied all the relevant information? Well, if Detective Tellez had told the magistrate judge, the judicial commissioner that, had in the Fitzgerald case that I just referenced, where there was a 62-paragraph affidavit detailing a year's worth of work, if Detective Tellez had done that, if he had actually explained what was going on, rather than conflating the two confidential informants into one, which is what he did here... Let's say it was a mistake. Let's just say you're right about all that. Call it whatever you want to call it. If I were the magistrate, I would have said, okay, stop bothering me about the stuff with the bad informant. Just tell me the stuff from the good informant. And then once you had that, you'd have enough to do what he did. That would have been perfect if the magistrate had known that. But instead, we have a person who deliberately, recklessly, or grossly and negligently disregarded that requirement. In addition, we found out that in that same affidavit that Detective Tellez stated that Ard made contact by phone with the undercover and said he was ready to purchase the nine We found out and had a second suppression hearing, including the request for a Franks hearing, because we found out that it wasn't actually Mr. Ard that contacted the detective. It was Mr. Ard that contacted a confidential informant. The confidential informant called the detective. The detective actually contacted Mr. Ard and offered to sell him drugs. And the reason why this is all important is that when a magistrate, a detached and neutral magistrate, has to decide whether there's probable cause, that magistrate needs to know exactly what's going on. Not a law enforcement officer's decision to withhold certain information that is relevant to the case. And I submit to you that the reason— Go to the second point. How would it have changed things if it had been more explicit about who said call whom? Well, the confidential informant would not have been assumed to be as reliable if it had been for a shorter period of time. And the second— I'm focused on the second one now. Yes. Your second inaccuracy. How would that have made a difference? Well, it would have made— Who called whom? I apologize, Your Honor. Go ahead. I didn't want to cut you off. No. Yeah. Just your second inaccuracy is the who called whom inaccuracy. Right. And I'm trying to sort out what that would have revealed to the neutral magistrate that would have led to not granting the warrant. Well, it would have revealed to the neutral magistrate that it was actually Detective Tellez who was contacting this individual, not Mr. Ard, who is actually directly having contact and calling out of the blue Detective Tellez after months of this investigation going forward. And the magistrate would have known that the confidential informant was actually involved in that transfer, in the purchase of the nine ounces of cocaine. But instead, the magistrate had no ability to verify that. Thank you. All right. You get your full rebuttal. Ms. Bedini, if I got it right? Yes. May it please the Court. Naya Bedini for the United States. Mr. Ard was convicted on five counts. Counts one through three were— Can you speak up a little? Yes. I'm sorry, Your Honor. Counts one through three arose from the search of Mr. Ard immediately following his arrest. This was a search incident to an arrest. The arrest was a run of the mill, reverse drug operation. There was nothing that went wrong with the arrest. It was by all means successful. So counts one through three are not at issue here. The only counts at issue are counts four and five. And these counts arose out of a firearm that was found at Mr. Ard's residence. The government realizes there's nothing in the search warrant that connects the residents directly to the illegal activity. However, that's not a necessity. This Court has held in many prior occasions that the inference, that illegality— What's your best case on that? Your Honor, there's so many cases— There's a lot of cases that say you need to say there's drugs in the house or something of that nature. This Court has always held, in each case, has always held that an inference can be made that an ongoing drug trafficker has evidence of illegality at his house. That's the Gunter case, the Miggins case, the Kenney case. The Court says that in Brown, in a footnote, it distinguishes Miggins and Gunter and Kenney. And the Court said that in Christian, and those cases are different from our case. So the issue here is whether Ard was engaged in ongoing drug trafficking. And the government maintains there is sufficient information in the search warrant affidavit to indicate that he was engaged in ongoing drug trafficking. We have a year-long investigation. We have a confidential informant. The affidavit contains two statements as to the confidential informant. The first one is the basis of knowledge statement. It says this confidential informant witnessed Mr. Ard possess, store, and transport drugs in the past. It doesn't say where. There's no indication where or when. It does not say where, Your Honor, but we are not relying on the direct nexus. We're relying on the inference of ongoing drug traffic activity. The totality of the affidavit indicates that there's an ongoing drug trafficking activity in this case. We have a reliability. It doesn't, because there are other facts. There are facts that this guy keeps calling, and he hasn't been able to come up with any money. That fact is not fatal, Your Honor. In fact, the Gunter facts, the facts in the Gunter case are precisely the same. In the Gunter case, there was a confidential informant, and he, the confidential informant, spoke to a middleman who was representing the defendant, Mr. Gunter, and there were no transactions. There's no police observation or confidential information, or the confidential informant had not observed any actual transactions in Gunter either. In this case, we even have more facts. We have firsthand knowledge that the confidential informant actually observed art, storing, possessing, transporting. But it's not related to any time or place. If Your Honor is concerned with staleness, again, the fact that this is an ongoing nature defeats the claim of staleness, and that's the Christian case, Your Honor. In Christian, the court held that the information provided was stale because it was eight months prior. In this case, we don't have that. We have information that was provided up to three days, as recently as three days prior to this arrest. Tellez, Sergeant Tellez, communicated with Ard, and Ard set up the control buy for ultimately nine ounces of cocaine. So we don't have the same facts here as we did in those other cases. As far as Fitzgerald, Fitzgerald is also different, Your Honor. Why don't you respond to your friend's arguments about the good faith Leon exception? So he says he focused on two inaccuracies, the suggestion of two informants, and why don't you just go through them? Your Honor, if you look at this affidavit, none of the statements in this affidavit is false. He refers to, as Sergeant Tellez also testified, the bulk of the investigation was carried on by the second informant. He only speaks about the second informant in this affidavit. The basis of knowledge statement is attributed to the second informant. The reliability statement, the fact that the second informant had helped him in five prior felony convictions, all those statements are attributed to the second informant. The district court in this case held that Art had not made a preliminary showing, a substantial preliminary showing of any falsity in this case. And under Elkins, I believe that finding is entitled to clear error review, and there's no clear error in this case. As Sergeant Tellez testified, it's only the second informant that provided the bulk of the information. And as I said, none of the statements in the affidavit is false in this case. Then his other point is the question of who was contacting whom. Your Honor, the district court also found that that's entirely unnecessary for probable cause finding. Also found that that was not reckless or an intentional misleading. The affidavit says that Art made contact with Tellez. The facts were actually that Art called the confidential informant and asked him to contact, to connect him with Tellez. So this could be read that Art made contact with Tellez via the confidential informant. But as I said, Your Honor, that's entirely unnecessary to a finding of probable cause. What happens if we decide that the search warrant was insufficient and there's no Leon exception? What happens? Just the two counts involving the Luger are dismissed or you have to go back for a new trial? Your Honor, the two counts involving the Luger and the obliterated serial number are entirely unrelated to the evidence that came in through the other counts. Even if there was any error as to these two counts, it was harmless. There's no reasonable probability that those two affected each other. So no, Your Honor, even if you find that there was no probable cause and there was no good faith, they would not affect each other. I want to take some more time to distinguish. The courts said, even if we're arguing probable cause, this court said in McCoy and Fitzgerald, that there are cases very similar to ours, that there was probable cause in those cases. There's no what? This court said in Fitzgerald that there was good faith in those cases. And this case is really no different from Fitzgerald. As in Fitzgerald, similarly here, we have a CI and a confidential informant, as well as phone calls between the defendant and the officer. And there's no actually consummated transactions in Fitzgerald dealers. So this case is no different than Fitzgerald. So this affidavit is not bare bones. And there's no false information. Therefore, even if this court were to find that there was no probable cause, this affidavit is fine under the good faith exception. The other issue that the defendant raises is the sufficiency of the evidence. And I don't think there's any genuine disputes with respect to that issue. So unless the court has any questions? I don't think so. OK, thank you, Your Honor. Thank you. All right, Mr. Bell. Thank you, Your Honor. My opponent in this case brought up a number of different things. I do dispute that based on the reading of this affidavit that Mr. Ard should be classified as what's called an ongoing drug trafficker, according to the statement that the government's made. And the reason why I want to dispute that is just if you look at the actual affidavit that was submitted with the search warrant, what it says is that the confidential informant, I guess the first one, that Mr. Ard was involved in the sale and distribution of powder cocaine in the city of Memphis. Now we found out later on at the first suppression hearing that that was about a year before, that it was from the first confidential informant. And I want to make this very clear because the government stated that all three of these statements about the confidential informant were attributable to the second confidential informant. Detective Tellez testified explicitly in the first suppression hearing that that first statement was about the first confidential informant. So we have that. Okay, and the first statement you're referring to that he said was the first informant says what? Mr. Ard being involved in the sale and distribution of powder cocaine in the city of Memphis. That's the very first statement. Isn't that point reiterated later? By the second informant is what I'm getting at. Well, the second informant observes Mr. Ard, according to this statement, observed Ard, and it doesn't say the second confidential informant, it just says the CI, observed Ard possessing, storing, and transporting both powder cocaine and crack cocaine in the past. It doesn't say where, it doesn't say how much, it doesn't say anything about sale of that cocaine. All it says is possessing, storing, and transporting. And the reason why I split hairs here with the classification of an ongoing drug trafficker is because no one in this affidavit says anything about that they bought drugs or sold drugs to Mr. Ard. Thank you. Thank you. I appreciate your briefs and argument. The case will be submitted. The clerk may call.